## No. 8747.

FARNCOMB ET AL. *v.* CITY AND COUNTY OF DENVER ET AL.

CONSTITUTIONAL LAW—*Due Process of Law.* The charter of Denver of 1904 provides for the erection of park districts, and the acquisition of lands for public parks; and that when the cost of a park site is determined the clerk shall give notice by advertisement for ten days in a newspaper of general circulation, specifying the cost of the improvements, and the share apportioned to each lot or tract in the district, and that objections filed within sixty days will be determined by the supervisors, at its first regular meeting, after said sixty days. By sec. 300 it is provided that at the meeting specified the Board of Supervisors sitting as a board of equalization shall hear all such objections, and may recommend modifications of the apportionment, and the Board of Public Works may make such modifications as seem just, or confirm the first apportionment, and the court shall then assess the cost of the improvements against all real estate in the district. Bill to

restrain the enforcement of an assessment against property of plaintiffs for the acquisition of lands as a park, the plaintiffs contending that by section 300 the Board of Equalization has power to suggest only alterations in the assessments, and property owners were thus without remedy. *Held* on the authority of Denver v. Londoner, 33 Colo. 104; Londoner v. Denver, 210 U. S. 373; Londoner v. Denver, 52 Colo. 15, that the provisions in question constitute due process of law, and that plaintiff having failed, after ample opportunity, to present their objections to the proper board, can not now be heard to question the regularity of the proceeding.

*Error to Denver District Court, Hon. John H. Denison, Judge.*

Mr. OMAR E. GARWOOD, Mr. BERT MARTIN, Mr. T. J. O'DONNELL, Mr. J. W. GRAHAM, and Mr. CANTON O'DONNELL, of counsel for plaintiffs in error.

Mr. JAMES A. MARSH, Mr. HENRY A. LINDSLEY and Mr. WALTER E. SCHWED, for defendants in error.

Mr. Justice Bailey delivered the opinion of the court.

IN this action plaintiffs in error here, plaintiffs below, for themselves and others similarly situated, sought to have certain assessments against their properties declared null and void, and the City and County of Denver restrained from enforcing payment. The assessment alleged to be unlawful is that established by Ordinance No. 3, Series of 1913, of the City and County of Denver, for providing parks and parkways in the East Denver Park District. The ordinance sets out, as done, all the acts requisite to be done before the ordinance could be legally passed, and· *prima facie* shows compliance with all the charter provisions under which the land was secured. The property affected by the ordinance is that comprising the East Denver Park District, the purpose being to provide funds for what is known as the "Civic Center," within such district.

Plaintiffs contest the regularity of the preliminary steps leading to the passage of the assessing ordinance, and also contend that due process of law is not afforded by the hearing provided for before the board of supervisors, sitting as

a board of equalization, since its action is not final, but advisory only.

A demurrer to the complaint was sustained and judgment of dismissal was entered accordingly, plaintiffs having elected to stand by their complaint and their cause as thereby made.

It is urged that section 300 of the charter of the City and County of Denver does not provide due process of law for taxation purposes. The section is as follows:

"At the meeting specified in said notice, or any adjournment thereof, the Board of Supervisors, sitting as a board of equalization, shall hear and determine all such complaints and objections, and may recommend to the Board of Public Works any modification of their apportionments. The Board of Public Works may thereupon make such modifications or changes as to them may seem equitable and just, or may confirm the first apportionment, and shall notify the council of their final decision; and the council shall thereupon by ordinance assess the cost of said improvement against all the real estate in said district and against such persons, respectively, in the proportions above mentioned."

It is argued that as the board of equalization thus established has power only to suggest or recommend alterations in the assessments, protestants are without remedy. This is set up as a question never before suggested, much less urged, in any of the several cases in which like Charter provisions have been construed, providing for the assessment and collection of funds for public improvements.

Section 300, *supra*, supersedes section 31 of the Charter of 1903, which makes similar provisions for hearing complaints, except that the City Council is designated as the equalization board to recommend changes in assessments to the Board of Public Works. The constitutionality of section 31, was questioned in *City of Denver v. Londoner*, 33 Colo. 104, 80 Pac. 117, where plaintiffs contested the sufficiency of the petitions of the property owners of a paving district, the legality of the publication of the ordinance creating the district, the sufficiency of the published notice,

and the validity of the law creating the Board of Public Works. It was further contended that due process of law was not provided by the Charter, and that certain specific tracts of land were not benefited, and that the assessments were arbitrary and excessive. In substance, the same questions were raised in that case as are before us in this one. This court upheld the position of the City, and while the Supreme Court of the United States reversed that decision, it did so wholly upon a point which in no way affects any question herein involved. This case is ruled, therefore, by that case, except upon the point upon which it was reversed.

In discussing the inquiry whether the City Council, as a board of equalization, sitting for the purpose of hearing complaints, and with power only to recommend relief, is a competent and constitutional tribunal, this court in *City of Denver v. Londoner, supra,* after discussing *Brown v. City of Denver,* 7 Colo. 305, 3 Pac. 455, said:

"It is urged that because the judgment of the city council is not final, but its action is subject to revision by the board of public works, that therefore it is not a competent tribunal. The word 'competent,' as employed in the Brown case, does not convey any such meaning, but, rather, that the tribunal which the law designates shall be suitable, and legally qualified to act. It does not necessarily follow that the judgment of such tribunal must be final. The main purpose of affording an owner a hearing upon the question of assessing his land for special benefits is to give him the opportunity to be heard upon the *quantum* of the tax which may be assessed upon his land, as well as its validity. If this hearing is afforded at some stage of the proceedings, he is given the opportunity to be heard which the fundamental law contemplates." (Citing *Bauman v. Ross,* 167 U. S. 548, 42 L. Ed. 270, 17 Sup. Ct. 966.)

*Denver v. Kennedy,* 33 Colo. 80, and *Denver v. Dumars,* 33 Colo. 90, were decided with *Denver v. Londoner, supra,* and in them other provisions relative to special improvement taxes, and matters pertaining to the construction of the Charter provisions were determined, in favor of the city.

The Supreme Court of the United States, in passing upon the constitutionality of the charter provisions, in *Londoner v. Denver*, 210 U. S. 373, 52 L. Ed. 1103, 28 Sup Ct. 1108, decided that these provisions were sound, and afforded due process of law.  At page 380 that court said:

"The ninth assignment questions the constitutionality of that part of the law which authorizes the assessments of benefits.  It seems desirable, for the proper disposition of this, and the next assignment, to state the construction which the Supreme Court gave to the Charter.  This may be found in the judgment under review, and two cases decided with it.  (*Denver v. Kennedy*, 33 Colo. 80, 80 Pac. 122, 467; *Denver v. Dumars*, 33 Colo. 90, 80 Pac. 114.) From these cases it appears that the lien upon the adjoining land arises out of the assessment; after the cost of the work and the provisional assessment is certified to the city coun-,cil, the land owners are afforded an opportunity to be heard upon the validity and amount of the assessment by the council, sitting as a board of equalization; if any further notice than the notice to file complaints and objections is required, the city authorities have the implied power to give it; the hearing must be before the assessment is made.  This hearing provided for by sec. 31, is one where the board of equalization 'shall hear the parties complaining and such testimony as they may offer in support of their complaints and objections as would be competent and relevant.'  (33 Colo. 97) and that the full hearing before the board of equalization excludes the courts from entertaining any objections which are cognizable by this board.  The statute itself, therefore, is clear of all constitutional faults."

And at page 378:

"The State Supreme Court held that the determination of the city council was conclusive that a proper petition was filed, and that decision must be accepted by us as the law of the State.  The only question for this court is whether the charter provisions authorizing such a finding, without notice to the landowners, denies to them due process of law. We think it does not."

And further, at page 380:

"The fifth assignment, though general, vague and obscure, fairly raises, we think, the question whether the assessment was made without notice and opportunity for hearing to those affected by it, thereby denying to them due process of law. The trial court found as a fact that no opportunity for hearing was afforded, and the Supreme Court did not disturb this finding. * * * Those interested therefore, were informed that if they reduced their complaints and objections to writing, and filed them within thirty days, those complaints and objections would be heard, and would be heard before any assessment was made. The notice given in this case, although following the words of the statute, did not fix the time for hearing, and apparently there were no stated sittings of the council acting as a board of equalization. But the notice purported only to fix the time for filing the complaints and objections, and to inform those who should file them that they would be heard before action. The statute expressly required no other notice, but it was sustained in the court below on the authority of *Paulsen v. Portland,* 149 U. S. 30, 37 L. Ed. 637, 13 Sup. Ct. 750, because there was an implied power in the city council to give notice of the time of hearing. We think the court rightly conceived the meaning of that case and that the statute could be sustained only upon the theory drawn from it."

In *Londoner v. The City and County of Denver,* 52 Colo. 15, the allegations of the complaint are substantially the same as in this case. The Londoner suit was brought on behalf of the plaintiff, and all others similarly situated in the East Denver Park District. It was alleged, as here, that the rules for apportioning the benefits were unreasonable and unjust; that there were irregularities, inconsistencies, conspiracy and fraud, in the preliminaries relating to the notices, protests, remonstrances, and the permission given to some protestants to withdraw their objections. The question of the power of the City to acquire land except by bond issue regularly approved by the electors, and whether the Charter provisions provided due process of law, were also

at issue.  In that suit, as here, the cause was dismissed on demurrer.  In disposing of the alleged lack of power in the municipality to acquire lands as provided in the Charter, this court, on page 24, after citing Hamilton on the Law of Special Assessments, sections 256, 257; and sections 307, 356 and 357 of Page & Jones on Taxation by Assessments, said:

"We therefore conclude that the people of the City and County of Denver, when making a provision for the municipality had the power to write therein provisions for the purchase of lands, or for the exercise of the power of eminent domain in acquiring lands for parks and parkways, and the payment therefor, in whole or in part, by collections arising from assessments made upon the property within the district specially benefited by the improvements and that the charter provisions in that respect are constitutional.

"2.  The charter provisions authorize the board of park commissioners to initiate the public improvements in question, and to finally determine whether the land necessary therefor shall be acquired, subject, however, to the will of the owners of a certain percentage in area of the real estate to be assessed for the cost thereof, to annul that authority by expressing their disapproval of the proposed improvements within a designated time."

In reviewing the charter provisions relative to the acquirement of land for parks and parkways, the court, at page 29, said:

"The charter provisions, by the necessary implication, provide for two adjudications of the facts as to the sufficiency of the notice given and the remonstrances filed. One, a direct hearing before the board of park commissioners. The other, in the nature of a review of that hearing by the city council.  *  *  *  It would seem that the action of the board of park commissioners in finally determining 'that said land shall be acquired for said purpose,' would, if it were not for the other provisions of the charter, be a conclusive determination that the property owners assented to the improvement.  But, be that as it may, as the charter

expressly declares that the findings of the council by ordinance as to such facts 'shall be conclusive in every court or other tribunal,' the duty to determine, as well as the conclusive effect of the determination of the city council, is fixed beyond doubt.    Freeman on Judgments, sections 522, 523 and 524."

Plaintiffs in the case above cited asked for an injunction restraining the city council from passing the assessing ordinance.    Prior to the determination of the suit on writ of error the ordinance was passed by the council.    Upon this phase of the case this court, at page 36, held:

· "The city council, in the exercise of the power vested in it by the Charter, and unrestrained by any existing authority, duly enacted an ordinance, declaring the existence of the essential facts.    This ordinance has the effect of a statute; and the mandate of the people of the municipality, expressed through their charter, is, that such findings shall be conclusive upon every court or other tribunal.    *  .  *    *
Under these circumstances, we certainly do not have the power to nullify the legislative mandate, that the findings of the council shall be conclusive upon every court or other tribunal, and declare it is not conclusive upon us."

Fraud was charged as to the preliminary proceedings of the park board, in practically the same terms as in the case at bar.    As to this, the court, at page 40, held:

"We are fully persuaded that upon the record as here presented, a court of equity can grant no relief to plaintiff in error."

In the case at bar, the contention of plaintiffs in error that the constitutional questions attempted to be raised are new, and afford valid ground for annulling all the proceedings of the city in the matter, is without foundation.    This question was settled in *Londoner v. Denver*, 210 U. S., as shown by the quotation herein from page 380 of that opinion.    As matter of fact, every contention made by plaintiffs in error is determined adversely to them by the rule of *stare decisis,* upon the authorities herein referred to, from which extracts are made.

The constitutionality of the provisions of the Charter as to hearing of complaints by the board of supervisors is not only settled by the rule of *stare decisis,* but is also *res judicata,* for in *Londoner v. Denver,* 52 Colo. 15, plaintiff brought suit upon behalf of himself and all others similarly situated in the East Denver Park District. Plaintiffs in error here were, and are, similarly situated, and they not only could have participated therein, but should have done so, and for this reason the judgment in that case is binding on them. Freeman on Judgments, 4th ed. 178; 2 Van Fleet's Former Adjudication, 569, 570; *Clark v. Wolf, et al.,* 29 Iowa 197, 207; *State ex rel. Brown v. C. & L. R. R. Co.,* 13 S. C. 290; *Lyman, et al. v. Faris et al.,* 53 Iowa 498, 5 N. W. 621; *Harmon v. Auditor, etc.,* 123 Ill. 122, 13 N. E. 161, 163, 5 Am. St. Rep. 502; *Cannon v. Nelson,* 83 Iowa 242, 48 N. W. 1033; *Ashton v. City of Rochester,* 133 N. Y. 187, 30 N. E. 334, 28 Am. St. Rep. 619, 623; 23 Cyc. 1269.

It is admitted that plaintiffs in error had ample time after lawful notice given to present their complaints and objections to the proper board, but failed and refused to do so. Under the authorities they cannot now be heard to question any of the acts of the City and County of Denver in the premises. *Fox v. Lipe,* 14 Colo. App. 259, 59 Pac. 850; *Pipe v. Smith,* 5 Colo. 116; *Walker v. Pogue,* 2 Colo. App. 109, 29 Pac. 1017. The judgment of the lower court should be affirmed, and it is so ordered.

Decision *en banc.*

Mr. Justice Teller and Mr. Justice Hill agree with the conclusion.

Mr. Justice Scott not participating.